GRAPHIC COMMUNICATIONS
INTERNATIONAL UNION,
LOCAL 554, Petitioner,

v.

SALEM–GRAVURE DIVISION OF
WORLD COLOR PRESS, INC., and Oc-
cupational Safety and Health Review
Commission, Respondents.

Ann McLAUGHLIN, Secretary of
Labor, Petitioner,

Graphic Communications International
Union, Local 554, Intervenor,

v.

SALEM–GRAVURE DIVISION OF
WORLD COLOR PRESS, INC., and Oc-
cupational Safety and Health Review
Commission, Respondents.

Nos. 87–1191, 87–1293.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 16, 1988.

Decided April 15, 1988.

As Amended April 25, 1988.

Jeffrey A. Hennemuth, Atty., Dept. of
Labor, with whom Allen H. Feldman, Asso-
ciate Sol. and Mary–Helen Mautner, Coun-
sel for Appellate Litigation, Dept. of Labor,
Washington, D.C., were on the brief, for
petitioner, Ann McLaughlin, Secretary of
Labor.

Eugene Cotton and Thomas D. Allison,
Chicago, Ill., entered appearances for peti-
tioner, Graphic Communications Intern.
Union, Local 554 in No. 87–1191.

Michael D. Freeborn, with whom Steven
M. Hartmann, Chicago, Ill., and Harvey G.
Sherzer, Washington, D.C., were on the
brief for respondent, World Color Press,
Inc.

Thomas D. Allison, Chicago, Ill., was on
the brief for intervenor, Graphic Communi-
cations Intern. Union, Local 554 in No.
87–1293.

Before WALD, Chief Judge, ROBINSON and BOGGS *, Circuit Judges.

Opinion for the Court filed by Chief Judge WALD.

WALD, Chief Judge:

Petitioner–Secretary of Labor (Secretary) and petitioner Graphic Communications International Union, Local 554 (Local 554), seek review of the Occupational Safety and Health Review Commission's (OSHRC or Commission) decision that in an Occupational Safety and Health Act of 1970 (OSHA), 29 U.S.C. § 651 *et seq.*, citation enforcement proceeding, the Secretary must obtain federal district court authorization before directing a nonfederal employee expert to conduct a discovery inspection of an employer's premises. *Secretary of Labor v. Salem–Gravure Division of World Color Press, Inc.*, No. 83–509 (OSHRC, Sept. 3, 1986); Joint Appendix (J.A.) at 56. Because we rule that this change in longstanding Commission policy is based on the Commission's unsupported conclusion of the "unenforceability of [its] ... own protective orders against third party consultants," *see* J.A. at 64, we reverse the decision as arbitrary and capricious.

## I. BACKGROUND

### A. *Facts of the Case*

In April, 1983, the Secretary inspected the bindery department of a plant owned by appellee-World Color Press, Inc. (World Color), a company in the printing business. World Color operates two neighboring plants, one in Effingham, Illinois (Crossroads Press), the other in Salem, Illinois (Salem–Gravure). The first was the subject of Commission litigation in 1977, subsequent to an OSHA citation alleging violation of noise standards. *See World Color*

*Press, Inc.*, 6 OSH Cas. (BNA) 1084, [1977–1978] O.S.H. Dec. (CCH) ¶ 22,358 (*World Color I*). Then in May, 1983, the Secretary again issued a citation, charging World Color with an OSHA violation in its Salem–Gravure plant. The present petition for review arises from this event. Machinery in the bindery department was said to cause "undue repetitive motion trauma," constituting an infringement of OSHA's "general duty" clause. *See* 29 U.S.C. § 654(a)(1). World Color contested the citation. After initial pleadings, the Secretary requested permission to have its private consultants enter the Salem–Gravure plant for discovery inspection purposes.[1] World Color objected, opposing the entry of private consultants on the ground that only government employees are subject to criminal sanctions for disclosing trade secrets, hence they alone would be deterred from disclosing these secrets. The Secretary moved for an order from the Administrative Law Judge (ALJ) to compel entry. After a hearing, the ALJ ordered World Color to permit the Secretary's outside expert to enter its plant subject to the protective measures set forth in *Owens–Illinois, Inc.*, 6 OSH Cas. (BNA) 2162, [1978] O.S.H.Dec. (CCH) ¶ 23,218. (In *Owens–Illinois*, the Commission relaxed its general bar against the use of a nongovernmental expert provided that the expert signed an oath not to disclose trade secrets, and that the employer was made a third-party contract beneficiary of the oath.) World Color sought immediate review of this entry order.

On interlocutory appeal, the Commission stated that it lacks the authority to impose adequate sanctions against nongovernmental experts who violate its protective orders. It overruled *Owens–Illinois* "to the extent that [it] ... held otherwise...." *Secretary of Labor v. Salem–Gravure Di-*

---

* Of the United States Court of Appeals for the Sixth Circuit, sitting by designation pursuant to 28 U.S.C. § 291(a).

1. Pursuant to 29 C.F.R. § 2200.2(b), the Commission adheres to the Federal Rules of Civil Procedure. 29 U.S.C. § 661(g). Rule 34(a)(2) states that any party may request entry on another party's property "for the purpose of in-

spection and measuring, surveying, photographing, testing, or sampling the property or any designated object or operation thereon...." Fed.R.Civ.P. 34(a)(2); *see also* 29 U.S.C. §§ 657 (Secretary has authority to make inspections of employers' premises), 658 (Secretary has authority to issue citations for violations that are discovered).

vision of World Color Press, Inc., No. 83–509, at 9 (OSHRC, Sept. 3, 1986); J.A. at 64. The Commission "concluded that if the Secretary wants to use a nonfederal employee expert to conduct a discovery inspection, and if the employer establishes the existence of trade secrets," then the ALJ must "stay Commission proceedings to allow the Secretary to obtain an inspection warrant" from a federal district court, which warrant would be backed by the court's contempt power. Id. at 9–10; J.A. at 64–65. Following this ruling, the Secretary elected not to prosecute the citation for lack of informed testimony; and on January 26, 1987, the ALJ granted World Color's motion to dismiss the case.

The Secretary and Local 554 (hereinafter referred to collectively as the Secretary) petition for review of the Commission's order contending that it was arbitrary and capricious action, unsupported by evidence and mistaken as to the scope of federal district court jurisdiction.

### B. Legal History

Periodically, the Commission has reconsidered the circumstances under which the Secretary may use nongovernmental experts to inspect the premises of employers who have demonstrated the presence of trade secrets therein.[2] The two competing concerns, namely employers' need for confidentiality and the Secretary's need for thorough inspection and discovery, have proven difficult to balance. First, in 1975, the Commission reiterated its policy that generally excluded nongovernmental experts from workplaces where trade secrets exist. See Reynolds Metal Co., 3 OSH Cas. (BNA) 1749, [1975–76] O.S.H. Dec. (CCH) ¶ 20,214. Three years later, the Commission decided Owens–Illinois, Inc., 6 OSH Cas. (BNA) 2162. The Secretary's nongovernmental expert was permitted entry subject to several protective measures: (1) employers could refuse entry when they could show that the selected expert was associated with a business competitor; (2)

the expert had to sign an oath not to disclose trade secrets except to the Secretary or in Commission litigation; (3) the expert had to enter into a confidentiality agreement with the Secretary, which agreement specified the employer as a third-party beneficiary; and (4) the protective order, and its attendant sanctions upon violation, would be applied to all persons acting on the Secretary's behalf. Id. at 2167–68. Owens–Illinois protective orders gained quick acceptance. See, e.g., Fred's Frozen Foods, Inc., 7 OSH Cas. (BNA) 1271, [1979] O.S.H. Dec. (CCH) ¶ 23,461; see also Brief of Petitioner, at 21–22 & n. 16 (citing cases); 50 ALR Fed. 906, 912–13 (1980 & 1987 Supp.) (same). Modifications or additional protections allowed flexibility; indeed, in the present case, the expert was to be confined to specific locations inside the Salem–Gravure plant and was directed to surrender all notes and photographs to the Secretary's counsel.

In spite of the line of cases subsequent to Owens–Illinois that applied these protective measures, the Commission decided in the ruling now on review that it "lacks the authority to impose sufficient sanctions against a nonfederal expert who violates our protective order." Secretary of Labor v. Salem–Gravure Division of World Color Press, Inc., No. 83–509, at 8 (OSHRC, Sept. 3, 1986); J.A. at 63. The Commission overruled the holding of Owens–Illinois to the contrary. Id. at 9; J.A. at 64. Refusing to retreat to the Reynolds Metal Co. bar to nongovernmental expert discovery inspection, the Commission declared that, when an employer establishes the existence of trade secrets, the Commission would stay its proceedings

> to allow the Secretary to obtain an inspection warrant or other appropriate order in a federal district court that authorizes the inspection he desires and contains nondisclosure provisions that would bring the nonfederal expert under the court's contempt authority.

Secretary of Labor v. Salem–Gravure Division of World Color Press, Inc., No.

---

**2.** Unlike federal employees, private consultants are not subject to the criminal sanctions of the

Trade Secrets Act, 18 U.S.C. § 1905.

83–509, at 10 (OSHRC, Sept. 3, 1986) (footnote omitted); J.A. at 65.

## II. ANALYSIS

### A. Present Action Is Not Barred By Issue Preclusion (Collateral Estoppel) Bar

■ World Color makes the threshold argument that the doctrine of issue preclusion (collateral estoppel) bars our consideration of this case. In *World Color I*, the Secretary unsuccessfully sought to conduct discovery inspection of appellee's Crossroads Press plant by an outside expert in acoustical engineering. The Commission adhered to its *Reynolds Metal Co.* decision that, absent good cause, on-site inspection by a private consultant would be prohibited when the entry might endanger the confidentiality of a company's trade secrets. Even though the Secretary now attempts to relitigate this issue of nongovernmental expert inspection, issue preclusion does not apply when there has been an intervening change in legal principles. *Commissioner v. Sunnen,* 333 U.S. 591, 599, 68 S.Ct. 715, 720, 92 L.Ed. 898 (1948). World Color errs when it states that "there has been no change in the controlling law" since *World Color I.* Brief of Respondent, at 17. In 1978, the Commission in *Owens–Illinois* ex-pressly overruled *World Color I* and the good cause restriction. *Owens–Illinois, Inc.,* 6 OSH Dec. (BNA) 2162, 2165. Because the *Owens–Illinois* decision has changed the governing law, we agree with the Commission, *see Secretary of Labor v. Salem–Gravure Division of World Color Press, Inc.,* No. 83–509 (OSHRC, Sept. 3, 1986); J.A. at 64 n. 8, that issue preclusion doctrine does not bar the Secretary's present action.

### B. Commission Ruling Was Arbitrary and Capricious

■ Agency decisions that depart from established precedent without a reasoned explanation will be vacated as arbitrary and capricious. *See International Union, UAW v. General Dynamics Land Systems Division,* 815 F.2d 1570, 1578–79 (D.C.Cir. 1987); *Brock v. L.R. Willson & Sons, Inc.,* 773 F.2d 1377, 1381 (D.C.Cir.1985). The Secretary's claim of arbitrary and capricious Commission action centers on the argument that the Commission did not supply any adequate reasons to expand protection beyond the *Owens–Illinois* safeguards to include a requirement of a federal court warrant before a nongovernmental expert would be allowed to conduct discovery in an employer's plant.[3]

3. Even were we to find adequate explanation for a departure from *Owens–Illinois,* we are skeptical that the particular departure made by the Commission is in accordance with law. The Commission does not cite any statutory or decisional authority for its assumption that district courts possess authority to issue discovery orders while a citation enforcement proceeding is pending. Instead, the Commission and appellee refer to 29 U.S.C. §§ 161, 657 [section 8], which specifically authorizes federal district courts' involvement in other stages of OHSA proceedings. These provisions are designed to ensure compliance with, not to replace, Secretary and Commission actions. Quite distinct, the order on review interposes courts to perform a duty Congress expressly empowered the Secretary and Commission to perform, namely, "issu[ing] such orders as may be appropriate to protect the confidentiality of trade secrets." 29 U.S.C. § 664.

Section 8 and 29 U.S.C. § 161 do not narrow this authority. Indeed, § 8(a) authorizes the Secretary "to enter ... inspect, and investigate any place of employment," "[i]n order to carry out the purposes of this chapter [chapter 15]...." 29 U.S.C. § 657(a). The purpose of chapter 15 is the broad one of "assur[ing] so far as possible every working man and woman in the Nation safe and healthful working conditions...." 29 U.S.C. § 651. Section 8(b) makes this assignment to the Secretary certain: "In making his inspections and investigations [precitation] under this chapter the Secretary may require the attendance and testimony of witnesses and the production of evidence...." The section then adds that "[i]n case of a contumacy, failure, or refusal of any person to obey such an order," the Secretary may seek to enforce the subpoenas in federal district court. 29 U.S.C. § 657(b). Unlike the order on review, therefore, this provision anticipates that district courts will enforce agency actions, not interrupt them.

Similarly, 29 U.S.C. § 161(1) (Commission power to issue subpoenas requiring production of evidence during its investigations), which is incorporated into OSHA by 29 U.S.C. § 661(i), also involves federal district courts only at this secondary, enforcement stage. *See* 29 U.S.C. § 161(2). Much different, the Commission order now on review indicates that the Secretary

The Commission makes several conclusory statements to demonstrate its inability to impose meaningful sanctions against private consultants. Debarment is said to carry too little deterrent. Also, like dismissal of a citation order, debarment offers no compensatory relief to the party injured by disclosed trade secrets. This attention to the alleged inefficacy of barring attorneys from Commission proceedings, however, is misplaced. *Owens–Illinois* mentioned debarment as only one of several, supplementary Commission disciplinary powers. *Owens–Illinois, Inc.,* 6 OSH Dec. (BNA) 2162, 2167. The *Owens–Illinois* holding is founded on protective orders requiring nondisclosure, which employers may enforce through third-party beneficiary clauses.[4] Because the Commission cannot point to a single case where this protection was insufficient—where disclosure occurred in violation of an *Owens–Illinois* confidentiality agreement—it focuses instead on the strength of federal district court contempt sanctions. That strength, itself controversial, *see* Brief of Petitioner, at 23–24 & n. 17, is immaterial without evidence that the *Owens–Illinois* measures are inadequate. No such evidence is provided. Nor is evidence offered to disprove the efficacy of similar confidentiality agreements applied by federal courts. *See, e.g., United Steelworkers of America v. Auchter,* 763 F.2d 728 (3d Cir. 1985); *Bunker Hill Co. v. EPA,* 658 F.2d 1280 (9th Cir.1981). Rather, the Commission simply declared that third-party beneficiary clauses may lead to protracted litigation and that damages may be too small. Because this conjecture cannot substitute for a reasoned explanation, and because Congress has expressly assigned to the Commission the authority to issue protective orders to protect employers' trade secrets, *see* 29 U.S.C. § 664, we must reverse the Commission's ruling as arbitrary and capricious.

In delegating to the Commission comprehensive authority to ensure the safety of workplaces across America, Congress did not envision that, as early as the discovery stage, Commission powers would be so circumscribed as to require repeated federal interventions. Accordingly, we vacate the Commission's involuntary dismissal of this case resulting from its order denying discovery, and reinstate—for consideration consistent with this holding—the Secretary's motion for enforcement of discovery.

*It is so Ordered.*

---

must seek the federal court order while proceedings are stayed before the ALJ. *See* J.A. at 65. This would seem to conflict with § 161(2)'s requirement that a Commission order precede recourse to the federal judiciary. Again, the implication is clear: Congress vested the Commission with sufficient authority to carry out OSHA responsibilities; Congress did not contemplate that the Commission would delegate these duties to the federal judiciary. *Cf. Oil, Chemical & Atomic Workers International Union v. OSHRC,* 671 F.2d 643, 652 (D.C.Cir.) (Commission was designed to function as district court), *cert. denied,* 459 U.S. 905, 103 S.Ct. 206, 74 L.Ed.2d 165 (1982).

**4.** The Commission emphasizes that the Secretary has taken the position that the Commission cannot enforce its protective orders once a final order on an underlying citation has been entered. *See* J.A. at 64 n. 7. It was this concern, however, that prompted the Commission in *Owens–Illinois* to include the third-party beneficiary provision. *Owens–Illinois, Inc.,* 6 OSH Dec. (BNA) 2162, 2167, 2167–68 n. 11.